# Exhibit A

## Supreme Court of the State of New York

| | | |
|---|---|---|
| | | ) CASE NO. 152147/2024 |
| Anonymous | | ) |
| | **Plaintiff,** | ) |
| | | ) COMPLAINT FOR |
| **v.** | | ) VIOLATION OF (1) TITLE VII |
| | | ) OF CIVIL RIGHTS ACTS 1964 |
| Kimberly Witmer, Dr. Linda Chen, Norah Ann Lovet, | | ) (2) GENDER DISCRIMINATION |
| Lucius Young New York City Department of | | ) (3) FAMILY DISCRIMINATION |
| Education (NYC DOE) | | ) AND CAREGIVER STATUS |
| | | ) (4) AMERICANS WITH |
| | **Defendants.** | ) DISABILITIES ACTS, 1990 |
| | | ) |
| | | ) |
| | | ) JURY TRIAL DEMAND |

Plaintiff (anonymous) ("the Plaintiff"), filing a Pro Se Complaint in this action against Defendant, Kimberly Witmer, in her personal capacity, as Executive Director, Curriculum and Instruction; and Defendants New York City Department of Education (NYC DOE), and Defendant's agents Dr. Linda Chen, Nora Ann Lovett, Lucius Young (collectively, "Defendants"), in their individual capacities as supervisors hereby alleges as follows:

### NATURE OF CLAIMS

This is an action for declaratory, injunctive, and equitable relief, as well as monetary damages, to redress the Plaintiff's grievance against Defendants' unlawful employment practices of which Plaintiff is a direct victim, including but not limited to disparate treatment, hostile work environment, workplace harassment and retaliation of Plaintiff due to her perceived disability, gender, and care giver status which commenced against her by the Defendant and its agents (Supervisors) who collectively carried out a campaign of unrelenting acts of harassment and unlawful retaliation, conducted throughout the COVID-19 pandemic, after Plaintiff filed a complaint for Defendant and agents' workplace violations, from which Plaintiff is afforded federal protection under Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII"), Americans with Disabilities Act (A.D.A.), 42 U.S.C. § 12101, et seq. and Gender (aka Sex) Discrimination, Family Discrimination and Caregiver Status under Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII"), all of which constitute status by which individuals are granted protection against is prohibited conduct.

Though Title VII does not expressly prohibit family responsibilities or caregiver status discrimination, such discrimination may be manifested through various forms which are covered by Title VII. Furthermore, the Equal Employment Opportunity Commission (EEOC), the federal agency enforcing Title VII, has issued enforcement guidance stating that discrimination against a worker caring for a child or sick family member may constitute unlawful disparate treatment. This is particularly notable in the context of caregiver responsibilities for underage sick children or family members, where this form of discrimination may be prevalent. Denying leave or making adverse employment decisions because an employee cares for a sick child or family member can constitute "sex-plus" discrimination, that is, discrimination based on sex plus another characteristic (such as caregiver status). This is actionable under Title VII according to the decision in Back v. Hastings on Hudson Union Free School District, 365 F.3d 107 (2nd Cir. 2004).

Plaintiff asserts the following cause of action under the doctrine of continuing violation, entitling her to bring forth claims which might, under other circumstances, fall outside of the statutory limitation period of the 300 days of the alleged unlawful employment practices for filing a complaint with the U.S. Equal Employment Opportunity Commission (EEOC); as per section 706(e)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(e)(1). However, this doctrine of continuing violation was affirmed in the seminal case of National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002), wherein the U.S. Supreme Court established the principle that each action constituting part of the continuing violation, tied by a common thread of purpose, intent, or impact, restarts the EEOC charge-filing period.

Accordingly, Plaintiff filed new charges against Defendant in this case based on a discriminatory act that took place on November 28, 2023, which is more than 300 days prior to the filing of Plaintiff's original charges. Filing this case is permitted under this doctrine as long as those acts are part of or related to a pattern of harassment that last occurred within the 300-day statutory period. The conduct on November 28, 2023, by Defendant's agent Kimberly Witmer meets this requirement because Kimberly Witmer's unlawful and discriminatory conduct against Plaintiff spans three consecutive years, and therefore falls within the continuing violation doctrine on the grounds that the discriminatory actions constitute an ongoing series of related acts, one or more of which falls within the limitations period.

The case law precedent of Lambert v. Genesee Hospital, 10 F.3d 46, 53 (2d Cir. 1993), underscores this rule, acknowledging that an act of harassment in a series of similar instances is actionable in the state of New York if it falls within the statutory time period and is part of an ongoing policy or practice of discrimination. To that end, this plaintiff's claim is timely and actionable.

This complaint respectfully requests that the court uphold the doctrine of constituting violation, as applied in this case, acknowledging that each act of alleged harassment triggers a new statutory period for filing suit with the EEOC."

## JURISDICTION AND VENUE

The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the action is based on Title VII of the Civil Rights Act and the Americans with Disabilities Act. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

Venue is proper under 28 U.S.C. § 1391 because all of the conduct giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

Pursuant to the New York State General Municipal Law § 50-e, a notice of claim must be properly served within 90 days from the date of occurrence. A proper Notice of Claim was originally filed on February 5, 2021, and a new Notice of Claim was filed on January 15, 2024, due to a new and additional act of discrimination against Plaintiff that took place on November 28, 2023.

Prior to the filing of this Complaint, Plaintiff filed a charge of discrimination and Retaliation with theEqual Employment Opportunity Commission ("EEOC") (EEOC Charge No. 520-2021-03029), on or about

September 23, 2021, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and Americans with Disabilities Act of 1990.

Plaintiff filed a new charge of discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC") (EEOC Charge No. 520-2024-02229), on or about January 12, 2024, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") for Gender Discrimination, Family and Caregiver Discrimination.

Upon information and belief, the EEOC provided Defendant with notice of the original charges of discrimination and Retaliation and will notify Defendant when the new Notice to Sue is issued to Plaintiff.

Upon information and belief, the EEOC conducted and completed an investigation into Plaintiff's original discrimination and retaliation charges against the Defendant.

After the conduct of investigation pursuant to Section 706 of Title VII, the EEOC found reasonable cause to believe that the Plaintiff was discriminated against and harassed based on perceived disability and was also subjected to Retaliation in violation of Title VII.

The U.S. Equal Employment Opportunity Commission issued a Notice of Right to Sue on October 18, 2022, authorizing Plaintiff's filing of the foregoing Complaint.

While Plaintiff has not yet secured a new Notice to Sue Letter from the EEOC, it is not required under the doctrine of continued harassment as recognizable by the Supreme Court of New York where the acts are part of or related to a pattern of harassment that last occurred within the 300-day statutory period, as in this case. The Plaintiff refers to the legal precedents set forth in precedential rulings such as Balsam v Delma Engineering Corp., 139 Misc.2d 597 (Sup. Ct. N.Y. Co. 1986) and N.Y. State Div. of Hum. Rights v Astro Moving & Storage Co., 117 A.D.2d 757 (N.Y. App. Div. 1986), among others, where legal authorities, in cases of continued harassment, a hostile environment is created and is considered not only a breach of the peace but also a violation of civil right laws, including but not limited to New York State Human Rights Law (Executive Law § 296) and New York City Human Rights Law (Administrative Code § 8–107). The sustained depletion of dignity, infringed personal freedoms, emotional distress, and perseverance under intimidation are all integral elements to this doctrine, as continually upheld in jurisprudence. Thus, this suit is brought in the Supreme Court of New York to seek justice and end such inappropriate conduct, as supported by New York State law.

Furthermore, this case was originally before the New York District Court of New York (23CV198). Based on New York Civil Practice Law Rules, (CPLR) § 3217(a)(1) Plaintiff may, without prejudice, voluntarily discontinue (withdraw) an action without a court order as long as Defendant(s) have not filed a responsive pleading nor have Defendant(s) filed a motion for summary judgment. The Plaintiff refiled her complaint on January 12, 2024, and subsequently withdrew the complaint on January 13, 2024. The Notice of Withdrawal was filed and served on Defendants on January 13, 2024, and an Affidavit of Service was filed with the court. According to Pursuant to F.R.C.P. 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the Plaintiff may refile her case in any appropriate jurisdiction. The EEOC notice to file states Plaintiff may bring her action in the New York Supreme Court.

Consequently, the Plaintiff took all the necessary steps to exhaust her administrative remedies.

All conditions precedent to the filing of the suit have been fulfilled and discharged in entirety, hence the instant complaint is fully ripe.

## MEMBERSHIP IN A PROTECTED CLASS

### I. Under Americans with Disabilities Acts

Membership in the protected class is defined "as a person with an actual or perceived disability" within Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Acts (ADA). Furthermore, "transitory and minor" mental health disability is protected against unlawful acts of discrimination under ADA as a perceived mental health disability when the condition lasts less than the six (6) months (See 42 U.S.C. 12102(3)(B)).

Plaintiff qualifies as a member under ADA. Defendant perceived Plaintiff as psychologically disabled and ordered Plaintiff to undergo a Psychiatric evaluation on November 9, 2020.

Defendant's Medical Examiner's determination on December 2, 2020, that Plaintiff was fit to return to work, does not preclude Plaintiff from protection under ADA law as a person with a perceived disability.

### II. Under Gender (Sex) and Family Status or Caregiver Discrimination

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII"), provides broad protections for employees from workplace discrimination on the basis of personal traits or status, which includes gender, familial, and caregiver status. Courts have interpreted this provision to protect individuals, particularly women, who are discriminated against because of their family caregiving responsibilities.

Plaintiff qualified as a member under her gender and family status. Defendant's agent Kimberly Wittmer filed a "stealing time" allegation against Plaintiff for leaving early to take care of her anorexic daughter when Plaintiff's supervisor, Kimberly Wittmer, was both aware that the child was at home on medical leave for her condition, and that Plaintiff as a supervisor, herself, was authorized to complete 35 hours per week in any combination of days under NYC Public Service Law governing Managers.

By Defendant's agent denying Plaintiff both the right to any configuration of her hours to meet 35 hours per week and by using going home to care for her sick daughter as an excuse to have Plaintiff investigated, charged and add a negative report in her employment record, subsequently used on November 28, 2023 to deny Plaintiff her right to work two days from home as mandated by the Mayor of New York, brings Plaintiff within the protected class of gender and family status or caregiver discrimination.

## NEXUS BETWEEN PROTECTED CLASS AND DISCRIMINATORY ACT

Members of a protected class have the right to be free and protected from discriminatory actions that "adversely affects any aspect of an employee's terms and conditions or privileges of employment" (See Chancellor Regulation A-830), which incudes but is not limited to employer's "failure to promote, a demotion, a significant workplace transfer...Discrimination against such [a] person ... in terms, conditions, or [reductions in] privileges of employment...) (See New York Exec Law § 296)

Demotion is considered an adverse employment activity from which ADA protects class members. Plaintiff was demoted on December 10, 2020, from a G5 position as Director of Policy and Engagement position to a G-4 position as Director of Special Projects.

Any assertion that Plaintiff's position changed due to a "reorganization" fails because (1) the Chief Academic Office (CAO), Linda Chen states, there was "no re-organization" in the psychological evaluation.

referral documents: and (2) Plaintiff's name is not included on the list of staff reassigned for the reorganization that took place within the CAO's division.

## PARTIES

- The Plaintiff, (anonymous), has been a New York City Department of Education employee since 2014. Prior to the unlawful demotion, Plaintiff served as NYC DOE as the Director of Policy and Engagement at the New York City Department of Education. At all relevant times herein, Plaintiff has met the definition of "employee" under all applicable statutes.
- The Defendant New York City Department of Education (NYC DOE) is the department of the government of New York City that manages the city's public school system. At all relevant times herein, the NYC DOE met the definition of "employer" under all relevant statutes.
- Defendant Dr. Linda Chen is being sued in her personal capacity as former Chief Academic Officer at the New York City of Education. Dr. Linda Chen is currently employed as the Senior Deputy Superintendent of Academics of Boston Public Schools (B.P.S.) at the New York City Department of Education located at 2300, Washington Street Roxbury, MA 02119. At all relevant times herein, the NYC DOE met the definition of "supervisor" under all relevant statutes.
- Defendant Kimberly Wittmer is being sued in her personal capacity as Executive Director of Core Curriculum, Division of Curriculum and Instruction in the Division of Teaching and Learning at the New York City Department of Education, located at 52 Chambers Street, New York NY 10004 and residing at 309 E 87th St, New York, NY 10128. At all relevant times herein, the NYC DOE met the definition of "supervisor" under all relevant statutes.
- Defendant Nora Ann Lovet is being sued in her former capacity as Deputy Executive Director, Instructional Programs at the New York City Department of Education. Norah Ann Lovet is retired and is now working at the NYC DOE on a part-time basis), located at 52 Chambers Street, New York, NY 10004 residing at 99 Bellmore Ave Point Lookout NY 11569 or at 500 E 77th St, New York, NY 10162. At all relevant times herein, the NYC DOE met the definition of "supervisor" under all relevant statutes.
- Defendant Lucious Young is being sued in his personal capacity as Senior Executive Director of Curriculum, Instruction, & Professional Learning at the New York City Department of Education, located at 52 Chambers Street, New York, NY 10004. At all relevant times herein, the NYC DOE met the definition of "supervisor" under all relevant statutes.

## FACTUAL ALLEGATIONS

1. The Plaintiff commenced employment with the NYC DOE in 2012 as Consultant in Division Research and Data where she worked for 10 months as a Data Analyst. In 2014, Plaintiff returned to the agency as a Knowledge Analyst in the Division of Human Resources and was promoted to Assistant to the Chief of Staff for the Chief Executive Officer within the Division of Human Resources in the fall of 2015. Soon thereafter, Plaintiff was hired to assume the entry level leadership position as "Director of Special Projects" to the Deputy Chancellor (DC) of Operations who invited her to apply to the position in the agency headquarters.

2. The Plaintiff was promoted twice, after that, under the leadership of the DC of Operations, first to Director of Operations Support from 2015 to 2016, then the DC received a request by the Chief Executive Officer of Schools Support for the Plaintiff to serve as his Director of Operational Policy and Research for School Support Services.

3. From 2018 to 2020, the Plaintiff served as Director, School Support Services within the Division of

Compliance Services in the General Counsel Office.

4. At the onset of the COVID-19 pandemic, the Plaintiff was competitively selected, after interviewing with nine senior staff members, to perform in the newly created executive leadership position as Director of Policy and Engagement to the Chief Academic Officer (CAO).

5. Accepting the position on March 18, 2020, Dr. Linda Chen was the Chief Academic Officer (C.A.O.) and the Plaintiff's Supervisor.

6. Dr. Linda Chen, whom Plaintiff had only met in person on three separate occasions, had a reputation for abusing staff. Ms. Roman had confided in Plaintiff that when she was recovering from cancer, Dr. Chen threatened her and demanded that she come to work despite her illness. Plaintiff had witnessed many occasions where Dr. Chen's chief of staff Katie Maro had been verbally abused in meetings, breaking out into tears. Katie Maro also confided in Plaintiff that she would see guidance from Alish Brady for these abusive episodes she endured. No one was safe from Dr. Chen's workplace abuse, including Plaintiff who was regularly subjected to Dr. Chen's arbitrary leadership, threats, and emotional volatility.

7. At the height of COVID-19, Dr. Chen turned her malicious intentions on Plaintiff contriving a false accusation about the alleged mental fitness of Plaintiff, who was already feeling the pressure of the workplace abuse under Dr. Chen's leadership. On November 9, 2020, Donald Conyers, First Deputy Chancellor, N.Y.C. Department of Education, approved proceedings initiated by Dr. Linda Chen, Chief Academic Officer, D.O.E. initiated by Dr. Linda Chen to investigate Plaintiff's fitness to work.

8. On November 10, 2020, Katherine G. Rodi, Executive Director of the Office of Employee Relations reassigned the Plaintiff to the Employee Relations Reassignment Unity pending the finalization of a fitness determination by a D.O.E. Medical Examiner.

9. On November 13, 2020, Lorraine Haynes, Director of H.R. Connect Medical Leaves and Records, provided the Plaintiff advising her to at end a medical examination.

10. On December 2, 2020, Dr. Anny Garner, the Medical Examiner, on behalf of the NYC DOE HR Connect Medical Leaves and Records Administration, conducted a fitness examination that reiterated the independent determination of Psychiatrist Dr. Richman, immediately concluding that the Plaintiff was fit to return to work the same day.

11. Despite two positive psychological examinations corroborating Plaintiff's fitness to return to work, Plaintiff was never returned to her original position. Plaintiff reported remotely to work every day for one week before learning on one week after the psychological determination, on December 10, 2020, that Plaintiff had been unlawfully demoted. Ms. Alicia Roman, former Chief Operating Officer of the Office of the C.A.O., called a telephonic meeting with Plaintiff, and Defendant (Dr. Linda) Chen was present on the call at 1PM in the afternoon. At that time, Ms. Roman stated that Plaintiff would no longer be reporting to Defendant (Dr. Linda Chen) effective immediately, since that the position had been canceled, and Plaintiff was being reassigned permanently to a different unit.

12. Neither Ms. Roman nor Dr. Chen made any mention that the reassignment was due to a reorganization and Dr. Chen had clearly stated that there was no reorganization in her completion of the psychological evaluation referral.

13. On December 11, 2020, the Plaintiff received an email from Ms. Alicia Roman, attached to a fabricated job description, which deliberately intended to mislead the Plaintiff into a belief that this position was similar in responsibility to the position she previously held when she reported to the Defendant (Dr. Linda Chen). This was a misrepresentation of the truth.

14. On December 14, 2020, the Plaintiff reported to her new supervisor Defendant (Kim Wittmer) who served at the time as Senior Director of Core Curriculum & Publications Office of Curriculum, Instruction and Professional Learning.

15. Plaintiff understood from Defendant (Kim Wittmer) that Plaintiff was replacing an employee named Katherine Lennon and performing her previous duties as Director of Special Projects, a position that was six reporting levels below the position, the Plaintiff was previously serving.

16. On December 14, 2020, following her conversation with Defendant (Kim Wittmer), Plaintiff conducted some research and learned that Katherine Lennon held a Director of Special Projects position, a G-4 position for which she was paid $95,059 per annum.

17. The Plaintiff soon realized that she had been reassigned to a position that is exactly six (6) reporting levels below the position she was previously assigned in her previous G-5 position, as Director of Policy and Engagement for which she received a salary of $133,673.

18. The Plaintiff retained an attorney, Mr. Noah Kinigstein, to commence negotiations with the NYC DOE General Council Office in the hope of the D.O.E. reviewing the facts and righting the wrongs commit ed by Defendant (Dr. Linda Chen), but it was to no avail.

19. On February 8, 2020, Plaintiff reached out to Deputy Chancellor Adrienne Austin, the former Deputy Chancellor of the Division of Community Empowerment, Partnerships, and Communications, who jumped at the opportunity to hire the Plaintiff.

20. The Plaintiff was offered the role of Executive Director of Family and Community Empowerment which paid $165,000 per annum. In the meeting, Deputy Chancellor Austin stated that she first needed to discuss a "lift and switch" with Defendant (Dr. Linda Chen) and the Chief Operations Officer Alicia Roman to add Plaintiff to her team.

21. On March 30, 2020, Deputy Chancellor Adrienne Austin explained in an email to Plaintiff that she had discussions with Defendant (Dr. Linda Chen) and was still trying to get her released for the position.

22. Later on, however, in a call with the Plaintiff, Deputy Chancellor Adrienne Austin explained that Defendant (Dr. Linda Chen) refused to release the Plaintiff from the demoted position, deliberately blocking the Plaintiff's transfer and promotion to the Executive Director position under Deputy Chancellor Adrienne Austin, for which Plaintiff was both qualified and requested for by Ms. Austin. This was a prime example of retaliation made against the Plaintiff by blocking her prospect for a bet er career opportunity without any rhyme or reason.

23. On February 5, 2021, Plaintiff filed a Notice of Claim preserving her right to sue Defendants o the developing discrimination issues.

24. On April 8, 2021, after repeatedly articulating to the new supervisor and Defendant (Kim Wittmer), who required unrealistic turnaround time for work that was not organized and impossible to complete in the time frame Plaintiff was given, the Plaintiff asked the Defendants (Kim Wittmer) to file a claim on the Plaintiff's behalf for retaliatory discrimination, for which the Defendant Kim Wittmer questioned the Plaintiff and never filed on Plaintiff's behalf in violation of EEOC requirements.

25. Having no recourse for justice other than by pursuing an EEOC case within and outside of the NYC DOE, the Plaintiff filed a discrimination case in April 2021, which was not responded to by the N.Y.C. Department of Education until October 27, 2021.

26. In November 2021, the Plaintiff filed another OEO complaint. Investigator Nirmala Bhimsen contacted the Plaintiff who had already filed an EEOC Case with the Federal Government, and the Plaintiff was made aware in a conversation with Investigator Nirmala Bhimsen that the NYC DOE was in receipt of the Federal EEOC filing and would no longer proceed with the DOE EEOC case.

27. Defendants deliberate and malicious acts of retaliation, discrimination, harassment, and the creation of a hostile work environment for the Plaintiff escalated following the filing of Plaintiff's OEO complaint with the agency.

28. On November 29, 2021, following the Thanksgiving holiday, Plaintiff returned from a trip to Virginia, where her husband was exposed to and contracted COVID-19. Hence, the Plaintiff notified the Defendants (Kim Wittmer).

29. On November 30, 2021, Plaintiff notified Defendants (Kim Wittmer) that she was ill when she woke up, exhibiting more serious symptoms of COVID-19, even though she did not test positive for COVID, but it was established later that Omnicron was highly contagious and did not behave like the earlier strain of COVID.

30. On November 30, 2021, due to close contact and exhibiting mild symptoms, Plaintiff was directed to quarantine for ten days by the Department of Health, which provided an isolation order at ached to law and regulation requiring mandatory quarantine for ten days.

31. An anonymous employee in the Timekeeping unit, a division of Human Resources responsible for administering COVID-19 policy related to employee time, denied knowing what the Q.A.P. code was used for, which Plaintiff explained entitled her to paid leave during quarantine.

32. The official timekeeping code policy clearly states that Q.A.P. code is used by staff with a negative COVID-19 test who have been ordered to quarantine.

33. The absence policy form PD 19 also has a section that may be completed by employees to Excuse Absences for Isolation.

34. Despite all of this policy provision that entitled Plaintiff to paid leave during quarantine, Plaintiff was explicitly denied those by both Defendant (Kim Wittmer) and the unidentified, co-conspirator Human Resources representatives.

35. Plaintiff was forced to put in a request for an advance of 15 days of paid annual leave for which it took over a year to pay back, time that would have been available to use in an emergency to care for her child.

36. Defendant (Kim Wittmer's) wrongful conduct was especially heinous due to her discriminatory acts against Plaintiff despite having been kept abreast continuously via email and on Microsoft Teams of the severity of Plaintiff's child's medical conditions for which the child had been in Anorexia Nervosa clinics in two different states during the COVID-19 pandemic in 2020 and who had been placed on Medical Leave in 2021 from her high school for the calendar year.

37. On December 16, 2021, Plaintiff received notice from the EEOC stating that the NYC DOE had responded to her charge.

38. On December 21, 2021, Plaintiff returned to an empty office, void of any other employees in the section where she was assigned to work, which housed approximately ten other staff members. Plaintiff continued working alone until after the New Year, clearly having been singled out to work while other staff members were permitted to work from home.

39. The Plaintiff continued to arrive between 7:30 am and leave at 2:30 pm, taking her lunch period the last hour of her workday so that Plaintiff could go home and feed her anorexic daughter, who was also on suicide watch.

40. On January 7, 2022, Plaintiff received an email from Defendants (Kim Wittmer), claiming that Plaintiff was leaving the office early without informing her.

41. On January 8, 2022, Defendant (Kim Wittmer) agreed to Plaintiff's work arrangement for a while when Plaintiff's daughter was home on medical leave from school.

42. On January 14, 2022, the Special Commissioner of Investigation for the City of N.Y.C. School District produced a letter recommending the D.O.E. take appropriate disciplinary action against the Plaintiff and further stating that the Plaintiff's conduct may have violated the conflicts of interest provisions of the New York City charter, which is administered by the New York City Conflicts of Interest Board, when the N.Y.C. Conflict of Interest Board had already resolved this matter in July 2020.

43. On July 27, 2020, the Plaintiff settled an N.Y.C. Conflict of Interest Board claim with a fine of $250.00 for having her automatic signature appear on an email inquiring about special education services for your child who had been diagnosed with ADHD and a reading difference.

44. The Board stated that it considered the Plaintiff's high-level city position, that the "Plaintiff sent only one email, and in an indirect manner" wherein the Plaintiff invoked her D.O.E. title in connection with her personal request.

45. Defendant (Kimberly Wittmer) emailed a summon to Plaintiff to review the Special Commission of Investigation (S.C.I.) findings dated January 14, 2022, concerning the alleged inappropriate use

of D.O.E. email and employee title, also advising the Plaintiff to be aware that this meeting may lead to disciplinary action.

46. At that meeting, Plaintiff noticed that neither of the original S.C.I investigators by whom she was interviewed in 2019 were mentioned in the determination she was handed. Plaintiff wrote to the investigators, Steven King and Robert LaRocco who had told Plaintiff back in 2019 that she was cleared of the allegations, and the case would be closed. However, Plaintiff never received a reply.

47. Upon further inspection of the January 14, 2022, determination, Plaintiff noticed that S.C.I Assistant Investigator Vanessa Rivera denied having ever spoken with the Plaintiff, upon inquisition by an unnamed source on behalf of Defendants.

48. Investigator Rivera was clearly not assigned to Plaintiff's case which by this time of her investigation was more than three years old and she appears to have been coaxed into agreeing to review the Plaintiff's emails without conducting an interview with the Plaintiff nor using information obtained from the original in- person interview conducted by Steven King and Robert LaRocco.

49. On January 20, 2022, Defendant Nora Ann Lovett, the supervisor of Defendant Kim Wittmer, came to Plaintiff's desk and informed her, followed up with an email, that she would be moved across the hall in the room where Defendants (Nora Ann Lovett and the Defendant Kim Wittmer) use to sit.

50. On January 21, 2022, Plaintiff moved, without protest, to her new location from room 113 to room 105 and worked without any incident.

51. On January 21, 2022, Plaintiff received an email from Defendant Norah Ann Lovett, accusing her of leaving the office before the day was over to which Plaintiff responded to Defendant Norah Ann Lovett explaining the personal circumstances of her daughter's serious medical issues.

52. Between May 2021 and January 2022, Plaintiff kept Defendants (Kim Wittmer, a subordinate of Defendant Norah Ann Lovett), aware of the developments with her daughter.

53. On January 25, 2022, Defendants (Norah Ann Lovett and Defendant Kim Wittmer), as a follow up to an email invited Plaintiff into the hallway and informed her that she must work from 9 am to 5 pm regardless of her personal circumstances with her daughter and despite not having responsibilities that require 9 am to 5 pm execution and that have been carried out between 8 am and 4 pm since the Plaintiff began working in the division in December of 2021.

54. Defendants (Norah Ann Lovett and Defendant Kim Wittmer) denied Plaintiff the managerial employee privilege of a "Flex Schedule" to which Plaintiff is entitled as a G-5 manager.

55. On April 15, 2022, Defendants (Kim Wittmer) wrote a letter summarizing the meeting regarding the discussion with the Plaintiff about the Conflict-of-Interest case that the City Conflict of Interest Board had already settled and issuing a unilateral investigation and determination resulting in a denial of Plaintiff's right to due process.

56. On August 1, 2022, the Plaintiff received an email from Jared Feirstein, Confidential Investigator N.Y.C. Department of Education, stating Office of Special Investigations (O.S.I) was investigating which was filed by Defendants (Kim Wittmer) alleging that the Plaintiff had stolen time, an offense, if found guilty, may result in the termination of an employee even if he or she holds a permanent civil service title.

57. In the interview, the O.S. I. investigator suggested to Plaintiff that she should request a Cybershift card, a standard office item that facilitates employees' ability to clock in and out of the building using a station located on each floor, especially when the computers start slowly or crash and prevent employees from clocking in or out in a timely manner.

58. Since contacting Defendant (Kim Wittmer) after two years for the Cybershift card seemed a futile undertaking, Plaintiff reached out to Ms. Alburg.

59. On September 28, 2022, Ms. Alburg promptly coordinated the issuance of a Cybershift card for use by the Plaintiff.

60. Due to Defendant (Kim Wittmer) failure to issue Plaintiff a Cybershift card for over two years under her supervision, Defendant (Kim Wittmer) pursued false allegations against Plaintiff for alleged "attendance issues" either through O.S.I or by conducting her own unilateral, judge and jury investigation, without providing Plaintiff an opportunity to respond, taking away Plaintiff's right to due process under the U.S. Constitution.

61. The Defendant (Kim Wittmer) has never provided policy about any office procedures including at attendance, the preferred timekeeping practices, etc. and as recently as January 5, 2022, the Plaintiff has continued to request office policy guidelines from Defendants (Kim Wittmer) without success. To date, January 16, 2024, Plaintiff has still not received any policy guidelines.

62. Plaintiff submitted to the investigator a response to each of the dates and violations alleged by Defendant (Kim Wittmer). Plaintiff also supplied the O.S.I investigator with an example of the poor timekeeping of Defendant (Kim Wittmer) compared with the Plaintiff's prior timekeeper, who unlike Defendant (Ms. Wittmer), had always approved the Plaintiff's time in a timely and professional manner, which Defendant (Ms. Wittmer) had never done.

63. On September 12, 2022, Plaintiff received an email from Defendants (Kim Wittmer) summoning Plaintiff to a disciplinary meeting scheduled on September 15, 2022, at 2:30 pm to discuss absences, a unilateral disciplinary action void of due process accommodations for the Plaintiff and performed without the application of proper investigation methods.

64. On September 13 and September 14, 2022, Plaintiff contacted Defendant Kim Wittmer's new supervisor, Defendants (Lucius Young), who replaced Defendants (Norah Ann Lovett), to intervene, thus, to prevent the ongoing harassment, Plaintiff was suffering from under the supervision of Defendants (Kim Wittmer) providing the Defendants (Lucius Young) with Plaintiff's OEO allegations which he is obligated to report and advise Defendants (Lucius Young) that compliance with the law mandates his mitigation of the conflict between Defendants (Kim Wittmer) and the Plaintiff.

65. On September 19, 2022, Plaintiff was invited to interview for a Senior Director, Community Partnerships position in same division formerly lead by Deputy Chancellor Adrienne Austin, Office of Family and Community Engagement Division.

66. On September 21, 2022, Jennifer Alburg (the former Chief of Staff to Defendants Lucius Young) provided Plaintiff with a desk phone, standard office equipment which the Defendants (Kim Wittmer) had intentionally failed to provide Plaintiff for the two years that she reported to Ms. Wittmer.

67. Due to Defendants (Kim Wittmer's) unlawful, desperate, and retaliatory conduct to not provide a desk telephone, the Plaintiff was made unreachable to past and present staff.

68. This resulted in the Plaintiff being forced to use her personal cell phone to contact other employees in the course of performing her professional responsibilities, to get technical assistance when the computer crashed, regularly, and when at ending team's meetings and calling schools.

69. Not being issued a desk phone was a proximate cause of significant hardship to Plaintiff because it not only prevented her from receiving any emergency communications concerning her daughter from her doctors, or teachers. Further, being forced to use Plaintiff's personal cell phone, her personal cell number was exposed to countless people with whom the Plaintiff would not have otherwise shared her personal cellphone number for reasons of security and avoidance of unwanted contact, for example new colleagues, other school staff who are strangers to the Plaintiff.

70. Consequently, as a result of Defendants (Kim Wittmer) not providing the Plaintiff the basic office equipment of a desk phone that is standard practice in all public and private places of business, Defendants (Kim Wittmer) made working exceedingly difficult for the Plaintiff as well as unlawfully subjected Plaintiff to compromising her confidentiality and violating her right to privacy.

71. On September 28, 2022, Ms. Alburg promptly coordinated the issuance of a Cybershift card for use by the Plaintiff.

72. On October 4, 2022, Plaintiff received another summons from Defendants (Kim Wittmer) for a disciplinary absence meeting at which Plaintiff was advised that her attorney was not authorized to end such a meeting.

73. Rather than abiding by the EEOC law and mitigating the conflict between Defendants (Kim Wittmer) and the Plaintiff, Defendants (Lucius Young) escalated the issues by jointly attending this meeting held on October 17, 2022.

74. At this meeting, Defendants (Kim Witmer) proceeded to state unfounded allegations, against Plaintiff, of calling out at the last minute or leaving early, to which Defendants (Kim Wittmer) refused to provide an opportunity for Plaintiff to receive the allegations in writing so as to provide a follow-up response.

75. Defendants (Kim Wittmer) pronounced that she would make a unilateral determination based on this discussion which Plaintiff could not fully participate in because Plaintiff was not made aware

of the details of the meeting until being at the meeting with Defendants (Kim Witmer) and Defendants (Lucius Young).

76. The conduct of this meeting was contrary to the democratic way investigator Jared Feirstein conducted the investigation.

77. Highly qualified to serve in this capacity, Plaintiff advanced to the second and last round of interviews on October 4, 2022.

78. Upon not receiving a response from the interviewers, neither by the time Plaintiff was told a decision would be made nor receiving a courtesy email about the status of her application, Plaintiff learned that due to Defendant (Kim Witmer's) wrongful allegations of theft of time brought against Plaintiff with O.S.I, Plaintiff had a "red flag" on her HR record which would deter the office from advancing with her application for the Senior Director, Community Partnerships position.

79. The plaintiff never heard back from the office but was forwarded with the announcement that the position had been filled by a less qualified candidate.

80. Defendant's wrongful acts of initiating an unsubstantiated case with O.S.I which the investigator notified Plaintiff he would close has adversely harmed Plaintiff's position to advance in the agency, damaging her personal reputation among colleagues working in the division in which Plaintiff was interviewed, and unlawfully denying her to secure the professional opportunities for which she is duly qualified.

81. Following the absences summons meeting of October 17, 2022, Plaintiff was provided with a letter that Defendant (Kim Witmer) claimed to be summarizing the meeting but is not consistent with the recording and includes a considerable amount of information that was never covered in the meeting and is now a part of the Plaintiff's permanent human resources record, representing untrue facts never discussed at the meeting.

82. Defendant (Lucius Young), in addition to violating his obligation as Defendant (Kim Witmer's) supervisor to mitigate the effects of possible EEOC violation by Defendants (Kim Witmer), is also an accomplice to Defendant (Kim Witmer's) harassment as his presence in unilaterally arranged meetings and inaction to mitigate constitute both his participation in the act of harassment and also his endorsement of the Defendants (Kim Witmer's) harassment as her supervisor and agents of the NYC DOE government agency.

83. Plaintiff has consistently provided Defendant (Kim Witmer) with adequate notice of anticipated days off, such as attending in-person Doctoral Program in Law and Policy in which Plaintiff is enrolled.

84. However, Defendant (Kim Witmer) intentionally allowed the advanced permission requests to attend her 2023 classes once per two months to expire in Cybershift and has not extended Plaintiff the professional courtesy of providing an explanation or even responding to Plaintiff's email advising of the expired requests.

85. Defendant (Kim Witmer) false allegations that Plaintiff's absences are an employment violation is a misrepresentation and the intentional denial of Plaintiff's employee benefits, and her

disciplinary actions against Plaintiff have all been a wrongful, arbitrary, and malicious exercise of Defendant, (Kim Wittmer's) power as a supervisor.

86. The filing of the unsubstantiated allegations against Plaintiff by Defendants (Kim Wittmer) placed a "flag" on the Plaintiff record, which all internal Human Resources staff could see and recognize as there is an open investigation against Plaintiff. This "flag" resulting from Defendant (Kim Wittmer's) S.C.I. allegations have damaged Plaintiff's ability to secure a position outside Defendants (Kim Wittmer's) division and away from her harassment.

87. Since October 2022, the Plaintiff has not received any work assignments from Defendant (Kim Wittmer), has been excluded from team meetings, social events in the office, team communication emails, all of which the Plaintiff has learned about from fellow employees.

88. Plaintiff has received no new work assignments in November 2022 and continued to inquire about receiving work from Defendant (Kim Wittmer), suspecting this was another attempt to entrap Plaintiff into allegations of her not doing office work when none was being assigned.

89. On November 2, 2022, the Plaintiff received an email from O.S.I investigator Jared Feirstein confirming his intent to close the investigation into Defendants (Kim Wittmer's) allegations that the Plaintiff had stolen time.

90. On November 7, 2022, Defendants (Kim Wittmer) supplied a letter that falsely alleges to describe the interview with Plaintiff that took place in respect of allegations of her absence, however it fails to provide a true account of the discussion held in the meeting.

91. On December 5, 2022, just ten (10) days before Defendants (lawyers) submitted their December 15, 2022 rebuttal to SDHR, the Plaintiff received an email from Latchmi Sutram, Deputy Director of Operations, Core Curriculum and Social Studies Core Curriculum Implementation and Publications Division, who works in the same Division of Curriculum and Instruction as Defendants (Kim Wittmer) stating that a laptop was now available for purchase on behalf of the Plaintiff.

92. On December 12, 2022, just three (3) days before Defendants (lawyers) submitted their December 15, 2022, rebuttal to SDHR, the Plaintiff received another email from Latchmi Sutram confirming that the package containing the laptop had been delivered with instructions to the Plaintiff to pick up the delivery from the mail room. In actuality, however, the device had not been delivered to the mail room but had been delivered to Massachusetts.

93. As a result of Defendants (Kim Wittmer's) unlawful, desperate, and retaliatory conduct to not provide a laptop, when the Plaintiff is aware that all other employees received a laptop, the Plaintiff was forced to work in a hostile work environment in which the Plaintiff is aware of the explicit deliberate and disparate treatment she is receiving from Defendants (Kim Wittmer). This unlawful conduct results in the Plaintiff's work being more difficult because the employee privilege enjoyed by all other employees, (e.g.: to use their assigned laptop to take notes at meetings or to use it in other locations designed for employees to work on laptops in available spaces through the office building) is denied to the Plaintiff.

94. Defendant (Kimberly Wittmer) failed to provide Plaintiff with a standard issued laptop in nearly two years of employment on the team should be treated as blatant concoction of evidence and afterthought on their part, since the extraordinarily large budget allotted to the agency and to the division in which the Plaintiff currently works allows for such facilities to be provided instantly.

95. On December 23, 2022, December 3, 2023, and December 4, 2023, the Plaintiff emailed Defendants (Kim Wittmer) before she left for the day to ask for work, while also providing work-related suggestions and to apprise her of the continued research into education related topics the Plaintiff was carrying out to stay busy. In this email the Plaintiff also inquired whether taking personal calls to speak to the Plaintiff's daughter, who continues to require ongoing social and emotional support, to make doctors' appointments, or to speak with her teachers, etc. may be taken on the phone or taken outside of the office. Defendants (Kim Wittmer) did not reply.

96. January 8, 2023, Plaintiff filed pro se with the United States District Court, Southern District of New York against joint and severally liable Defendants named in this case.

97. On April 11, 2023, Plaintiff filed a Motion for Entry of Default Judgement against the Plaintiffs after each Defendant had been duly served, were all represented by the New York Law Department, that defaulted by not providing an answer to Plaintiff's complaint before the court deadline of April 7, 2023 after having violated various rules of Civil Procedure, denying Plaintiff's due process rights under federal and NY State law rules and procedures.

98. Plaintiff's May 21, 2023, Request for a Clerk's certificate of Default was denied by the Clerk upon the direction of the Judge.

99. On August 3, 3023, Defendant (Kimberly Wittmer) informed me at a one-on-one meeting that her team (including me) would be permitted to work from home on Fridays and that we would not be receiving a written email about this work policy and that people are still permitted to work from home if they choose.

100. On August 25, 2023, Plaintiff filed with the US Court of Appeals for the 2nd Circuit an interlocutory appeal of the lower court judge's decision to deny Plaintiff the relief she sought and was rightfully due as a legal consequence of the Defendant's default.

102. On November 16, 2023, HR at the DOE announced that the Mayor of New York City issued a citywide approval for managers to work two days from home for which Plaintiff as a manager, so Plaintiff applied.

103. On November 16, 2023, Plaintiff sent a request with the applicable form to Defendant (Kimberly Wittmer) to work from home two days per week.

104. The Appeals court denied both Plaintiff's interlocutory appeal and 11/23/2023 request for en banc review of Plaintiff's appeal, neither on the merit of the case but on a pre-occupation, the Clerk adopted from the lower court judge, concerning the Plaintiff's identity being made a part of the official case record.

105. On November 28, 2023, Defendant Kimberly Witmer denied Plaintiff's request to work two days from home.

106. Contrary to Defendant's (Kimberly Wittmer) actions granting Plaintiff permission to work from home on August 3, 3023, just three (3) months earlier, Defendant (Kimberly Wittmer) justified

her November 28, 2023, denial of Plaintiff's request to work from home on an alleged incidents in the file that took place on March 15, 2023, and March 31, 2023, that took place five months earlier.

107. On or around, December 26, 2023, Plaintiff submitted a request for FMLA to the DOE Medical Leaves Unit.

108. The case was returned to the lower court, where the judge promised to find in favor of Defendants, following the judge's order to Plaintiff to re-file the complaint with her legal name in the caption.

109. On or around January 11, 2024, Plaintiff complied with the judge's order and refiled the complaint.

110. On January 13, 2024, Plaintiff, subsequently voluntarily withdrew the case from the lower court before Defendant's responded to the newly filed complaint.

111. On January 16, 2024, Plaintiff received the requisite "Notice of Claim" (number 2024LE001795).

112. On February 21, 2024, the EEOC issued an ADA Right to Sue Notice to Plaintiff in conjunction with her case against the NYC Department of Education and its' agents.

113. On March 12, 2024, Plaintiff's electronic filing with the New York County Clerk, was issued an index number.

114. Between December 26, 2023, and the beginning of April 2024, Defendant (Kimberly Wittmer) failed to cooperate with multiple requests made to her by the Medical Leaves Unit to enter Plaintiff's time in Cybershift, a role and responsibility required because she is Plaintiff's manager.

115. While Plaintiff's FMLA restorative leave request was approved on April 12, 2024, the process incurred intentional delays for four nearly (4) months caused by Defendant (Kimberly Wittmer) in collusion with the DOE's Human Resources Division and the DOE's Time Keeping responsible for Cybershift time entries.

116. The period of the approved FLMA restorative leave was between December 27, 2023, through April 26, 2024, contrary to the Plaintiff's doctor recommendations, which requested a return date of April 30, 3024.

117. On or around April 15, 2024, Plaintiff filed a work accommodation request, initially submitted via email because the delays Defendants (Kimberly Wittmer, HR and Time Keeping) caused by delaying the FMLA process, the online system did not permit filing the accommodation request using the online system.

118. On April 29, 2024, Plaintiff returned to work.

119. On April 30, 2024, Plaintiff received an approval of the accommodation request to work from home for two (2) months, which failed to reflect the duration of the accommodation request submitted by her doctors' recommendation of six (6) months.

120. When Plaintiff inquired via email for an explanation from the Office of Disability as to why the accommodation was not for 6 months, Plaintiff did not receive a response by either the Office of Disability that approved the accommodation, and neither HR nor Defendant (Kimberly

Wittmer) whom the Office of Disability claimed should have shared the reason with me at the interactive meetings that took place on April 29, 2024 and April 30, 2024, respectively.

121. Immediately, upon Plaintiff's return to work, Defendant (Kimberly Wittmer) recommenced her harassment of Plaintiff, announcing in an email dated April 30, 2024 that Plaintiff's work schedule has changed which directly and adversely harmed Plaintiff's flex-schedule managerial privileges, overloading Plaintiff with responsibilities without a transitional plan that sets Plaintiff up for a successful return to work, and preventing Plaintiff from participating in ongoing medical care she was receiving during hours maintained while on FMLA – consistent with Plaintiff's pre-FMLA work schedule.

122. On the same day of April 30, 2024, Plaintiff wrote to the Disability Office requesting an immediate reassignment for at least the period of the accommodation due to Defendant (Kimberly Wittmer) actions that violated ADA and EEOC, including arbitrarily changing Plaintiff's work schedule causing Plaintiff not be able to receive ongoing medical care, unilaterally denying Plaintiff's use of flex-time to obtain medical care and causing Plaintiff immeasurable stress for which the accommodation was approved so that Plaintiff could recover.

123. On May 1, 2024, the Disability Office responded to Plaintiff, denying the request for reassignment, claiming reassignment was unavailable to Plaintiff and refusing to respond to Plaintiff's questions about the ADA violations committed by Defendant (Kimberly Wittmer) as a result of changing Plaintiff's schedule without cause or justification, which prevents Plaintiff from participating in ongoing medical care.

124. On May 7, 2024, Plaintiff learned while trying to regain access to a system integral to her work responsibilities, that her profile as an active employee had been deleted from the DOE system.

125. Not only was Plaintiff removed as an employee during the approved FMLA and accommodation periods which she was forced to take as a result of the ongoing ADA violations, EEOC violations that have caused Plaintiff substantial emotional harm, Plaintiff learned that a bonus of $3,000 provided to all managers has been denied to Plaintiff as a consequence of not actively working as of February 2, 2024 – a date when Plaintiff would have otherwise been working had Plaintiff not been a victim of Defendant (Kimberly Wittmer) and co-conspirator agents of the NYCDOE.

126. While Plaintiff has endured insufferable emotional, financial, psychological and physical harm due to the relentless, malicious, malfeasant treatment she has been the direct victim of Defendant (Kimberly Wittmer), this Defendant, without assuming any new professional responsibilities, has been unethically enriched by the DOE who has rewarded her handsomely, all while supervising Plaintiff, with a higher professional title, now as Executive Director, and three salary increases to now $150K per year from $123K and the recent additional $3,000 bonus and 15% increase, all while Plaintiff was unlawfully assigned to her supervision. These financial rewards is how the New York City Department of Education perpetrates harassment in its' ranks through people such as Defendant (Kimberly Wittmer), who was compensated for her ongoing harassment, disability violations and family discrimination, caregiver status discrimination against Plaintiff for the past four years.

127. In perpetuation of the aiding and abetting of the DOE's efforts to oppress and destroy employees who bring claims against them for protected rights under the EEOD; Defendant (Kimberly Wittmer) is given unyielding, omnipotent authority to openly and notoriously violate all internal and external laws, policies and regulation intended to protect innocent victims as she performs this violations with the approval, encouragement and support of the NYC

Department of Education, its' multiple divisions and countless agents, in retaliation against Plaintiff for exercising her rights to workplace free of discrimination, that is protection under Federal EEOC law and ADA law.

128. While Plaintiff has suffered under the strain if the workplace harassment and discrimination at the hands of NYC Department of Education, supervisors and its' agents, all of whom are both aware and mandated to mitigate discrimination when made aware of it, neither the NYC Department of Education's OEO to which the discrimination was repeatedly reported, direct supervisors of Kimberly Wittmer, Norah Ann Lovett and Lucius Young, nor any other supervisors listed here in this case also required to report claims discrimination have taken the required action to separate Plaintiff from the ongoing and continuous harassment she has informed each of them has and continues to be underway.

129. This has resulted in Plaintiff's deteriorating emotional and physical health which have been corroborated by independent medical professionals which were submitted by Plaintiff to receive the approved FMLA restorative leave and work from home accommodations because the unhealthy, hostile and corrosive work environment caused by Defendant (Kimberly Wittmer) and accomplices, has caused Plaintiff to take many unpaid days off from work to seek medical intervention from multiple specialists, which has vastly diminished her personal savings, dramatically harmed her ability to financially obligations, take care of her responsibilities at home to care for her daughter who struggles with anorexia and now care for her own mental and physical health.

130. After being diagnosed with Depressive Anxiety Disorder, Plaintiff has been prescribed medication for the first time because Plaintiff has had never had history of mental health issues before now due to the pressure of unrelenting workplace abuse over the last three years.

131. While the medical conditions Plaintiff has developed likely qualify her for eligibility for paid medical leave, Defendants' HR policy requires a supervisor to provide a "character" reference for applicants to be granted paid sick leave - ample opportunity for discrimination at an employee's most vulnerable moment. The past three years of discrimination by Plaintiff's supervisor Kimberly Wittmer who has consistently and unabatedly denied Plaintiff every and all eligible benefits for the health of Plaintiff and her family, it is rightfully assumed that Plaintiff applying for said paid leave would be futile, when the benefit is available in her most dire need.

## Application of Law to the Fact – Dr. Linda Chen

### I. Background of the Law

Workplace discrimination, harassment, and retaliation are prohibited under both Federal and State laws. Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. prohibits employment discrimination based on race, color, religion, sex, and national origin. The Americans with Disabilities Act (ADA) prohibits employment discrimination against qualified individuals with disabilities. Additionally, New York State Human Rights Law (NYSHRL) "prohibits employers from discriminating against employees and potential employees on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status."

### II Application of Law to Facts

A. Discrimination and Harassment

The Plaintiff's supervisor, Dr. Linda Chen, and the NYC Department of Education have breached provisions under Title VII and the ADA when the allegations against the Plaintiff's mental fitness surfaced, initiated by Dr. Chen. The NYC DOE's reassignment of the Plaintiff following a medical examination, despite her fitness for work, is discrimination based on perceived disability (ADA, 42 U.S.C. § 12102(3)).

## B. Retaliation

Retaliation under Title VII is seen when an employer punishes an employee for engaging in legally protected activity. In this case, the NYC DOE's decision to reassign the Plaintiff, without any other convincing reason immediately after allegations of discrimination, constitutes retaliation.

## C. Aiding and Abetting

New York State Human Rights Law (NYSHRL) section 296(6) imposes liability on individuals for aiding and abetting any discriminatory practices committed by the employer. Dr. Linda Chen, as the Plaintiff's supervisor, engaged in acts that contributed to the discrimination and retaliation against the Plaintiff.

## III. Case Law

### A. Employment Discrimination - Disability Discrimination

In Francis v New York Post, Supreme Court of New York found that a reasonable jury could conclude that the defendant newspaper regarded the plaintiff as having a disability when it terminated his employment while he was on leave following a heart attack (No. 15027/12, 2014 WL 5002148)

### B. Retaliation

Recent case law suggests that retaliation is viewed under a broader lens. In Nassan et al v NYC Department of Education et al, the court found that an employee who was terminated following a complaint of discrimination had indeed been a victim of retaliation (Civil Action No. CV-15-3812, E.D. New York, 2016).

## IV. Conclusions

The described acts of discrimination, harassment, retaliation, and aiding and abetting by the Defendants are in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and New York State Human Rights Law. Dr. Linda Chen's unlawful conduct ruined Plaintiff's professional career at the agency which led to the ongoing and continuous harassment and retaliation carried out by other agents of the Defendant, most pervasively by Kimberly Wittmer.

### Application of Law to the Fact – Kimberly Witmer

## I. Background of the Law

A key component of Title VII focuses on the prohibition of harassment. Harassment becomes unlawful when either enduring offensive conduct becomes a prerequisite for continued employment, or the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider hostile, intimidating, or abusive. This extends to supervisors and employees at all levels of the organization.

## II. Application of laws to Facts

### A. Discrimination and Harassment

The Plaintiff's supervisor, Kimberly Wittmer and the NYC Department of Education have breached the provisions under Title VII protection against gender, family and caregiver status discrimination for denying Plaintiff from remaining at home to care for her husband when he had COVID, bring charges against Plaintiff for exercising her right as a supervisor to use a flex schedule in order to care for her anorexic child, by denying Plaintiff the right to work from home two days per week by using unsubstantiated allegation added to her file with the assistance of Defendants lawyers, OSI investigators and Human Resources agents and officers.

### B. Retaliation

Retaliation under Title VII is seen when an employer punishes an employee for engaging in legally protected activity. In this case, the NYC DOE's decision approves each of the acts of discrimination performed by Kimberly Wittmer in violation of Plaintiff's protected class and legal rights, constitutes retaliation.

### C. Aiding and Abetting
New York State Human Rights Law (NYSHRL) section 296(6) imposes liability on individuals for aiding and abetting any discriminatory practices committed by the employer. Kimberly Wittmer, as the Plaintiff's supervisor, carried out a campaign of harassment against Plaintiff that contributed to the unlawful discrimination, disparate treatment, unsafe and hostile work environment for three consecutive years that Plaintiff has endured.

## III. Case Law

In the case of Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), the Supreme Court held that an employer can be held vicariously liable for the discriminatory actions of a supervisor, even if the employer was not aware of the supervisor's actions. This case is relevant to the Plaintiff's allegations that Wittmer's supervisor, Lucius Young, was an accomplice to Wittmer's harassment.

In the case of Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), the Supreme Court held that Title VII's retaliation provision covers any employer action that would have been materially averse to a reasonable employee or job applicant. This case is relevant to the Plaintiff's allegations that Wittmer retaliated against her for exercising her rights under Title VII.

### Application of Law to the Fact – Norah Ann Lovet and Lucius Young

## I. Background of the Law

A key component of Title VII focuses on the prohibition of harassment. Harassment becomes unlawful when either enduring offensive conduct becomes a prerequisite for continued employment, or the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider hostile, intimidating, or abusive. This extends to supervisors and employees at all levels of the organization.

It is critical that supervisors quickly act upon any notice or suspicion of harassment within their departments. Under Title VII, supervisors are more than ordinary employees. Their actions, and in some

cases inaction, can bind the employer legally. Hence, the importance of education and training supervisors in handling such issues cannot be overstressed, nor can the need for a robust and effective system for responding to complaints of harassment.

## II. Application of Law to Facts

### A. Discrimination and Harassment

### Norah Ann Lovet

On January 25, 2022, Defendants (Norah Ann Lovett and Defendant Kim Wittmer), as a follow up to an email invited Plaintiff into the hallway and informed her that she must work from 9 am to 5 pm regardless of her personal circumstances with her daughter and despite not having responsibilities that require 9 am to 5 pm execution and that have been carried out between 8 am and 4 pm since the Plaintiff began working in the division in December of 2021.

Defendants (Norah Ann Lovett and Defendant Kim Wittmer) denied Plaintiff the managerial employee privilege of a "Flex Schedule" to which Plaintiff is entitled as a G-5 manager.

### Lucius Young

Lucius Young was complicit with Defendant (Kim Wittmer's) harassment as his participated by his presence in a unilaterally arranged by Kimberly Wittmer, Defendant's agent.

### B. Aiding and Abetting

On September 13 and September 14, 2022, Plaintiff contacted Defendant Kim Wittmer's new supervisor, Defendants (Lucius Young), who replaced Defendants (Norah Ann Lovett), to intervene, thus to prevent the ongoing harassment, Plaintiff was suffering from under the supervision of Defendants (Kim Wittmer) providing the Defendants (Lucius Young) with Plaintiff's OEO allegations which he is obligated to report and advising Defendants (Lucius Young) that compliance with the law mandates his mitigation of the conflict between Defendants (Kim Wittmer) and the Plaintiff.

## III. Case Law

A. Employment Discrimination - Supervisor On Notice of Harassment and Fails to Act or Intervene
The U.S. Supreme Court ruled in "Faragher v. City of Boca Raton, 524 U.S. 775 (1998)" and "Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998)" that an employer is vicariously liable for actionable discrimination caused by a supervisor, but the employer can avoid liability if it proves that (1) it exercised reasonable care to prevent and correct promptly any harassing behavior and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.

B. Acting Promptly Upon Discovering Harassment
In "Mikels v. City of Durham, 183 F.3d 323 (4th Cir. 1999)", the court held that a company cannot merely take a supervisor's denial at face value but should conduct a thorough investigation into the allegations.

## IV. Conclusions

The suppression of the civil rights of many workers by the Defendant under the veil of absolute power is not only an affront to the founding principle of democracy but a blatant violation of the federal law, specifically Title VII of the Civil Rights Act of 1964. As prominent civil rights activist John Lewis poignantly

warned, a thriving democracy will indeed crumble when unchecked power reigns supreme and justice becomes a select privilege, as is evidenced in this case.

Central to the U.S. legal system is the ability of every citizen to air their grievances in a court of fair and equal judgment. When the legal system fails to do so, it serves as a precariously revealing testament to the all-pervading harm inflicted on the public due to the unabashed disregard of rule of law, which particularly heinous when city agencies and their agents are allowed to inflict unabated tyranny against their victims – powerless Plaintiff, - with a biased and damaging depletion of the city's resources (See, State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408 (2003)).

Notably, Title VII established the EEOC to allocate and enforce protection rights to workers, thus prohibiting discrimination in the workplace; and yet, city agencies, cloaked under the guise of legality, undermine these rights with impunity and continue to commit discriminatory acts with apparent regularity (See, e.g., McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). Defendants have used countless measures to apply emotional, financial, and professional pressure on Plaintiff to dissuade her efforts to obtain justice against them using a series of tactics in the workplace and within the legal system.

In the case of Defendant Kimberly Wittmer, her reward for complicity is not only a flagrant dereliction of public duty but also a clear violation of both the let er and spirit of the law. With her exponential salary increase in stark juxtaposition to your stagnant income, despite your superior qualifications and experience, this evidence clearly illustrates a pervasive systemic bias within the city agency, contravening your rights under the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990.

Moreover, it is critical to the public interest that courts not set a precedent by departing from the established jurisprudence, by creating a culture of impunity that ultimately serves to erode public confidence in the justice system (See, e.g., Catret. v. Johns-Manville Sales Corp., 477 U.S. 317 (1986), as an example of recklessly dated case law application). Doing so in this case, would be a failure to address viable claims of discrimination under Title VII and would show an institutional disregard for protective federal law and a clear violation of the due process enshrined in the U.S. Constitution.

Furthermore, if the courts permit the Defendants to continue these violations unchecked, it will set a damaging precedent that could serve as a comfortable haven for future violators (See, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)). This has already resulted in countless other victims finding themselves caught in the paradox of seeking redress from an institution that works flagrantly against their interest, challenging the very fundamental and underpinning principle of fairness that ought to define our legal system.

Hence, for the sake of upholding our democracy's essential rule of law, it is incumbent upon this court, as a representative of the US judiciary, to ensure that such systemic discriminatory practices are remedied effectively. The concerns raised here bear a direct implication on the public interest, underscoring the necessity for courts not to allow this alarming trend to continue (See, e.g., Faragher v. City of Boca Raton, 524 U.S. 775 (1998)).

New York State Human Rights Law (NYSHRL) section 296(6) imposes liability on individuals for aiding and abetting any discriminatory practices committed by the employer. Norah Ann Lovett and Lucius Young, as the supervisor of Defendant Kimberly Wittmer who is Plaintiff's supervisor, engaged in acts that permit ed the continuous and ongoing discrimination and retaliation against the Plaintiff in violation of Title VII. Norah Ann Lovett and Lucius Young were both on notice by Plaintiff about the described acts of

discrimination, harassment, retaliation, and aiding and abetting by the Kimberly Wittmer is in violation of Title VII of the Civil Rights Act of 1964, and New York State Human Rights Law. Both Norah Ann Lovet e and Lucius Young participated in the harassment as well as failed their obligation as supervisors to mitigate or put an end to the behavior by Kimberly Wittmer which makes the both of them liable under Title VII.

**Relief**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

- Declare that the acts and practices complained of herein are in violation of Title VII and the ADA.

- Order Defendant DOE to, throughout the duration of the litigation of this case's deliberations before a jury, to immediately transfer Plaintiff to Administrative Status, while Plaintiff retains her permanent Civil Service Title, full salary, and medical care.

- Issue a permanent injunction restraining Defendant DOE, Defendant Kimberly Wittmer and Defendants' officers, agents, successors, employees, attorneys, and all persons acting in concert with them, from engaging in any such further unlawful practices.

- Order Defendant to make Plaintiff whole by providing all relief necessary to eliminate the effects of its unlawful employment practices, including back-pay, front pay, lost bonuses, Citywide salary increases, reinstatement or instatement into its unlawful employment practices, including back-pay, front pay, reinstatement or instatement into a position Plaintiff would have been in absent the discrimination, with all promotions, pay increases, and benefits, she would have received but for the unlawful practices described herein.

Or

- Provide Plaintiff with a severance package including all forms of monetary damages for pain and suffering itemized below between each named Defendant who are each jointly and severally liable:

    o Defendant (Kimberly Wittmer) 10,000,000.00 (ADA discrimination, Title VII workplace discrimination, hostile work environment, pain and suffering, family status and care giver discrimination, denial of authorized medical and professional benefits and privileges, violation of mandatory reporter responsibilities, unauthorized and unsupervised disciplinary hearings denying Plaintiff union representation or legal counsel, and violation of discrimination mitigation provision of the EEOC for supervisors, and willing participation as a co-conspirator with the NYC Department for retaliation again Plaintiff's exercise of EEOC and ADA protected rights.

    o Defendant (Dr. Linda Chen) $5,000,000.00 (hostile work environment, unlawful demotion, perceived disability discrimination, unlawful use of fitness investigation process, unlawful block of promotion, destruction of career, loss of job prospects, professional reputation and advancement opportunities, pain, and suffering.

    o Defendant (Norah Ann Lovett)  $1,000,000.00 (Title VII workplace discrimination, hostile work environment, disparate treatment, pain and

suffering, family status and caregiver discrimination, denial of authorized medical and professional benefits, violation of mandatory reporter and discrimination mitigation provision of the EEOC for supervisors, co-conspirator with the NYC Department for retaliation again Plaintiff's exercise of EEOC and ADA protected rights and advisor to Defendant Kimberly Wittmer of ongoing discrimination actions against Plaintiff.

o   Defendant (Lucius Young) $500,000 (violation of mandatory reporter and discrimination mitigation provision of EEOC for supervisors, co-conspirator with the NYC Department for retaliation again Plaintiff's exercise of EEOC and ADA protected rights.

o   Defendant (New York City Department of Education (violation of ADA, EEOC, NY State Civil Service Law, internal Chancellor Regulation A-830 and applicable administrative regulations governing employment discrimination) compensation includes:

> Permanent transfer to HR Administrative Status (where Plaintiff was transferred while waiting for the unlawful psychological evaluation initiated by Defendant (Dr. Linda Chen) to be carried out at Plaintiff's home until her retirement, at full salary and with medical insurance for herself and authorized family members, with no daily reporting requirement to clock in and out of Cybershift.

> Increase of baseline salary to $200,000.00 per annum for loss of promotion, advancement opportunities, loss professional reputation, loss of salary during approved FMLA restorative leave, loss of February 2, 2024 bonus and 15% increases awarded to managers during Plaintiff's approved FMLA restorative leave period.

> 3% salary increase pf Plaintiff's annually while HR Administrative Status until the age of her retirement.

> Retain all vested health and retirement benefits  and continuation of eligibility to BERS to pay towards retirement until age 65.

> Waiver of all medical and personal days off (missing days) taken by Plaintiff during the period of discrimination (since December 20, 2020 to present) in adherence to the 10 years of consecutive civil service required to vest for life-time health insurance

> Reverse all harm to Plaintiff which is either financial, retirement benefits, administrative, or professional, known or unknown to the Plaintiff, such as HR records, loss of benefits,  denial of pay such as bonuses and salary increases awarded to other full-time employees in Civil Service Titles who hold managerial status between December 20, 2020 to present including but not limited to the February 2, 2024 $3,000 bonus and salary 15% cumulative increases.

Date: January 16, 2024.                                    Respectfully submitted,

                                                          /s/ Anonymous

(a Pseudonym)                                             Plaintiff